Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5647 | **DATE** | 11/14/2001 |
| **CASE TITLE** | Ramesh Garg vs. Employee Benefits Administrative Co | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Plaintiff's motion for summary judgment (10-1) is denied, and Defendant's motion for summary judgment (14-1) is granted. Judgment is entered in favor of Defendant Employee Benefits Administrative Committee and against Plaintiff Ramesh Garg.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 15 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 11/14/2001 | |
| | | | date mailed notice | |
| ETV | courtroom deputy's initials | NOV 14 PM 4:54 | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

RAMESH GARG,

    Plaintiff,

v.

EMPLOYEE BENEFITS
ADMINISTRATIVE COMMITTEE
in its capacity as Plan Administrator
for SQUARE D COMPANY,

    Defendant.

No. 00 C 5647

Judge Rebecca R. Pallmeyer

## MEMORANDUM OPINION AND ORDER

Plaintiff Ramesh Garg, ("Garg") a former employee of Square D Company ("Square D"), has filed this action pursuant to the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. §§ 1001 et seq., specifically § 1133, and the supporting regulation, 29 C.F.R. § 2560-503-1(f). Plaintiff challenges the decision of Defendant Employee Benefits Administrative Committee (hereinafter, "Plan Administrator") to deny him short-term and long-term disability benefits under Square D's disability insurance plan ("the Plan"). Both parties filed cross-motions for summary judgment. Plaintiff argues that the Defendant arbitrarily and capriciously denied him disability benefits because he met the Plan's disability benefit eligibility criteria. Defendant argues that it has discretion to interpret the Plan and that it acted within that discretion in denying Garg's claim because he had been terminated from his employment before he sought benefits. For the reasons given below, the Court denies Plaintiff's motion for summary judgment and grants the Defendant's motion.

meet the new goals could result in termination. (*Id.*) Despite the improvement plan and Garg's efforts, Garg's productivity did not improve. (*Id.* at D00049.) At approximately 9:00 a.m. on November 30, 1998, Square D terminated Garg for poor job performance and asked him to leave the premises. (Admin Rec. at D00008; Lloyd Aff. ¶ 6.) Garg left the facility at about 9:20 a.m. (Lloyd Aff. at ¶ 7.)

B. **Plan Provisions**

Square D offers eligible employees a comprehensive insurance plan ("the Plan") incorporating medical, dental, life, accident, and disability coverage, a health care account, and a dependant care account. (Def.'s App. at Tab B, D000462.) The Plan provides both short-term and long-term disability benefits ("STD" and "LTD" respectively), for which the Employee Benefits Administrative Committee is the Plan Administrator and the Hartford Insurance Company ("Hartford") is the Claims Administrator. (*Id.* at D000484, D000510, D000515.) The Plan stipulates that discretionary authority over interpreting, applying, and administering the plan terms, benefit eligibility, and benefit payment is exclusively conveyed to the Plan Administrator. (*Id.* at D000510.) The Plan Administrator's decisions regarding these matters are final and binding unless decisionmaking authority has been delegated to an insurance company. (*Id.*) The Plan Administrator is required to administer the plan in compliance with ERISA.[1] (*Id.*)

---

[1] The Plan provides that:
For all Benefit Dimensions Plans, the Square D Company Employee Benefits Administration Committee (the "Committee") shall be

(continued...)

C. **Garg's Application for Disability Benefits**

1. **Short-Term Disability Benefits**

At 2:20 p.m. on November 30th, 1998, approximately five hours after Plaintiff was terminated, he telephoned Ms. Joyce Lloyd ("Lloyd"), the Human Resources Manager at his office. The record does not reveal the purpose of this call or the details of the conversation, but is undisputed that Ms. Lloyd advised Plaintiff that his disability insurance had been cancelled. (Admin. Rec. at D00008.) Ten minutes later, Plaintiff's wife telephoned Lloyd and requested an application for STD benefits because her husband "was not feeling well." (*Id.*; Lloyd Aff. ¶ 7.) Lloyd orally denied the request, explaining that Garg had been terminated earlier that day and was therefore no longer entitled to STD benefits under the Plan. (Admin Rec. at D00008; Lloyd Aff. ¶ 8.) At 2:50 p.m. Garg's wife called again and repeated her request, which Lloyd again denied. (Admin Rec. at D0008; Lloyd Aff. ¶ 9-11.) After further consideration,

---

[1](...continued)
the Plan Administrator for purposes of Section 3 (16) of the Employment Retirement Income Security Act of 1974 (ERISA) and shall have responsibility for administering the Plans and complying with any ERISA reporting and disclosure laws applicable to the Plans for any plan year. The Company has delegated to insurance companies issuing insurance contracts or acting as a claims administrator under some of the Plans the discretionary authority to make claims determinations and to apply prevailing industry standards and practices in doing so.

The Committee as Plan Administrator shall have the sole authority in the exercise of its discretion to interpret, apply and administer the terms of the Plans and to determine eligibility for benefits and the amount of any benefits under the Plans, and its determination of any such matters shall be final and binding, except to the extent such authority has been delegated to an insurance company.
(Admin Rec. at D000510.)

however, Square D decided to send Garg the STD claim forms and to leave the determination of Garg's eligibility up to the Plan Administrator. (Lloyd Aff. ¶ 9-12.)

Square D received Garg's completed STD benefits application on February 1, 1999 (Defendant's App. at Tab A, D00013-14), and forwarded it to Hartford in compliance with claims procedure. (Lloyd Aff. ¶ 12.) On April 2, 1999, Hartford denied Garg's claim for STD benefits. (Letter from Hartford to Garg of 4/2/99, Def.'s App. at Tab A, D00015-17.) Hartford's letter explained that Garg did not meet the Plan's definition of disability, and that even if Garg were disabled, his benefits under the plan would have ended on the day of his termination.[2] (*Id.*) In concluding the letter, Hartford explained the appeal process available to Garg. (*Id.* at D00017.) On August 25, 1999, Garg appealed Hartford's denial of his STD benefits application,[3] (Letter from Schultz to Powell of 8/25/99, Def.'s App. at Tab A, D00021-24), and on October 12, 1999, the Plan Administrator upheld Hartford's denial of Garg's STD benefits claim. (Letter from Square D to Schultz of 10/2/99, Def.'s App. at Tab A, D00002-3.) Rita Danker, Chairperson of the Appeals Committee, explained that the final decision was based on the same Plan language Hartford referred to in its April 2, 1999 denial of

---

[2] The Plan provides that STD disability benefits may only be claimed by parties who are both "unable to work because of an accident/illness as determined by the disability claims administrator" and "under the regular care of a doctor." (Def.'s App. at Tab B, D000490.) Moreover, STD disability benefit coverage ends "on the day that" an employee "end[s] employment with Square D." (*Id.* at D000477.)

[3] Plaintiff's lawyer wrote a letter on July 7, 1999 indicating that neither he nor Plaintiff received the April 2, 1999 denial letter from Hartford, and asking that the 60-day appeal period begin on the date of his letter. (Def's App. at Tab A, D000418.)

Garg's original STD benefit claim. (*Id.*)

## 2. Long-Term Disability Benefits

In his August 25, 1999 STD benefit appeal letter, Garg also requested an application for LTD benefits. (Letter from Schultz to Powell of 8/25/99, Def.'s App., at Tab A, D00021-24.) Garg filed the completed LTD benefits application on October 8, 1999 (Letter from Schultz to McLean of 10/8/99, Def.'s App., Tab A, at D00065-73), and Square D forwarded the application to Hartford on October 18. (Memo from Collar to Appeals Committee of 7/12/00, Def.'s App. at Tab A, D00041.) In a letter dated January 20, 2000, Ms. Amy Boys ("Boys"), a Hartford claims examiner, denied Plaintiff's LTD claim because he did not satisfy the Plan's definition of total disability and because any eligibility for LTD coverage would have ended on the day his employment ended.[4] (Letter from Boys to Schultz of 1/20/00, Def.'s App. at Tab A, D00075-77.) Boys closed the letter by explaining the appeals process to Garg. (*Id.*) Garg appealed Hartford's denial of LTD benefits on March 3, 2000. (Letter from Schultz to Boys of 3/9/00, Def's App. at Tab A, D00079.) On July 21, 2000, the Plan Administrator denied his LTD benefits appeal for the same reasons given by Hartford. (Letter from Danker to Schultz of 7/21/00, Def's App. at Tab A, D00036.) After this

---

[4] The specific Plan language defining total disability for purposes of LTD benefits provides that "[f]or the first twenty-four months you receive Long-Term Disability payments, you will be considered *totally disabled* if both the following are true: you are unable to perform each task required by your job; and you are under the regular care of a doctor. If you are gainfully employed, you cannot be considered totally disabled unless you are working under an approved rehabilitation program designed by Square D." (Def.'s App. at Tab B, D000492.)

final denial Garg filed the pending lawsuit before this Court.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Alexander v. Wisconsin Dep't of Health and Family Servs.*, 263 F.3d 673, 680 (7th Cir. 2001). A genuine issue of material fact exists "only if there is sufficient evidence for a jury to return a verdict for that party." *Alexander*, 263 F.3d at 680, *citing Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). When making this determination, the court must examine the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Alexander*, 263 F.3d at 680.

When presented with cross-motions for summary judgment, the court considers the motions simultaneously and draws all reasonable inferences in favor of the party opposing a particular motion. Buttitta v. City of Chicago, 803 F. Supp. 213, 217 (N.D. Ill. 1992), *aff'd*, 9 F.3d 1198 (7th Cir. 1993). This "Janus-like perspective" can result in the denial of both motions if material facts are disputed. *Id.* However, if no material facts are disputed and the only issue presented is a question of law such as contract interpretation, summary judgment is particularly appropriate. *Murphy v.*

7

*Keystone Steel & Wire Co.*, 61 F.3d 560, 564-65 (7th Cir. 1995). Because both parties agree the instant case involves an employee benefit plan governed by ERISA, the federal common law rules of contract interpretation are applicable. *Preze v. Board of Trs.*, 5 F.3d 272, 274 (7th Cir. 1993).

## B. Standard of Review for Claims Denied Under ERISA

In reviewing an ERISA plan administration decision, the court will use a de novo standard of review unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). This exception applies to the case at hand. In a section entitled "Administrative Information About the Plans," Square D explicitly confers to the Plan Administrator the authority to exercise discretion when interpreting, applying and administering terms of the Plans and to exercise discretion when determining eligibility for benefits. (Def.'s App., at Tab B, D000510.) The Plan further states that the Plan Administrator's decisions regarding these matters will be final and binding, unless this authority has been delegated to an insurance company.[5] (*Id.*) The court concludes that this language grants the Plan Administrator discretion which the court reviews under the deferential arbitrary and capricious standard. *See James v. General Motors Corp.*, 230 F.3d 315, 317 (7th Cir. 2000). Under this standard, any questions of judgment are left to the Plan Administrator. *Patterson v. Caterpillar, Inc.*, 70 F.3d 503, 505 (7th Cir.

---

[5] See footnote 2.

1995). Furthermore, before overturning a decision under this standard "the court must be very confident that the decision-maker overlooked something important or seriously erred in appreciating the significance of the evidence." *Id.* In addition, the court's deferential review of an administrator's decision is limited to the administrative record.[6]

## C. Application of the Arbitrary and Capricious Standard

The court now turns to the merits of Plaintiff's claim. Plaintiff argues that the Plan Administrator's decision was arbitrary and capricious on two grounds. First, Plaintiff contends that under the plain language of the Plan, he was "disabled" prior to November 30, 1998, and had up to a year to file for benefits from the date he last actively worked. (Plaintiff's Reply to Defendants' Motion for Summary Judgment at 1-2.) In the alternative, Plaintiff contends that the Plan language providing for the end of coverage when "you end employment with Square D" should be understood as a reference to action taken by the employee himself to terminate his or her employment. (*Id.*) Under this interpretation, Plaintiff argues, Square D's termination of his employment could not terminate his health coverage. Defendant argues that under the language of the Plan, an employee working full time can not be "disabled," and that Square D's action in terminating an employee ends his benefits coverage under the "you end employment" provision.

---

[6] Plaintiff contends that the Plan Administrator's denial of benefits must be supported by substantial evidence to withstand judicial review. The court does not need to resolve this legal question, because the Plan Administrator's decision in this case is supported by substantial evidence.

9

An ERISA plan is a contract, *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir. 2000), subject to the federal common law rules of contract interpretation. *Preze*, 5 F.3d at 274. These rules are tempered, however, when applied to an ERISA plan that grants discretion to the Plan Administrator. *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1147 (7th Cir. 1998). A court applying deferential review must accept the plan administrator's reasonable interpretation of the term even if it may be different from the claimant's equally reasonable interpretation. *Johnson v. Allsteel, Inc.*, 259 F.3d 885, 890 (7th Cir. 2001) (collecting cases); *Hightshue*, 135 F.3d at 1149; *Morton v. Smith*, 91 F.3d 867, 872 (7th Cir. 1996) (existence of just "one scenario in which a reasonable person would have made the same decision" as that made by administrators shows that discretion was not abused).

In light of the deferential review applicable in this case, the court can not conclude that Defendant acted arbitrarily or capriciously in denying Plaintiff's requests for benefits. First, Defendant's interpretation of "disability" under the Plan was reasonable. Under the "Disabilities That Qualify for a Benefit" Plan provision, employees will only be considered disabled if they are "under the regular care of a doctor" and are "unable to perform. . .job responsibilities because of an accident/sickness as determined by the disability claims administrator." (Admin. Rec. at Tab B, D000490.) Plaintiff never informed Square D of his medical ailments, communicated with a disability claims administrator, or failed to work full time. Accordingly, Defendant's decision not to deem Plaintiff "disabled" withstands

deferential review.

Second, Defendant's decision that Plaintiff's employment termination resulted in an end to his benefits eligibility was also reasonable. Defendant merely interpreted the "you end employment" language of the Plan in a general sense, and applied the provision to the evidence in the record before it. The evidence indicates that Garg's termination from Square D occurred at 9:00 a.m. November 30, 1998, and his request for a disability benefit application came several hours later that day. Therefore, the Plan Administrator determined that Garg was no longer covered by the Plan and denied his claim. Plaintiff's suggestion that only employees themselves can decide to "end employment" under the Plan is a plausible, but far from the only logical, reading of the relevant provision. It is not clear that a benefits provider would grant employees the exclusive power to determine when their coverage ends in the way that Plaintiff suggests. Even if Plaintiff's interpretation were the best one available, however, when administrators are empowered with discretionary authority to construe plans, the court must respect the administrator's reasonable interpretations. *Johnson*, 259 F.3d at 885. Defendant's decision to end coverage upon termination of an employee is reasonable. Accordingly, the Plan Administrator's motion for summary judgment regarding its denial of benefits is granted and Garg's motion for summary judgment is denied.

## **CONCLUSION**

For the reasons explained above, Plaintiff's motion for summary judgment (No. 10-1) is denied, and Defendant's motion for summary judgment (No. 14-1) is granted.

ENTER:

Dated: November 14, 2001

REBECCA R. PALLMEYER
United States District Judge